L. B. REPAIR CO., Inc., v. WHICHER et al.

(Supreme Court, Appellate Term, First Department. February 18, 1913.)

Liens (§ 11*)—Labor and Material—Contract.

> Where a repair company under a contract with a patentee furnished labor and material for the construction of an experimental engine, it acquired no lien therefor upon another and different engine which it subsequently constructed out of new material under a contract with a syndicate formed by the patentee, though both engines were constructed on the basic idea of the patent.

> [Ed. Note.—For other cases, see Liens, Cent. Dig. §§ 2, 3; Dec. Dig. § 11.*]

> Page, J., dissenting.

Appeal from Municipal Court, Borough of Manhattan, Third District.

Action by the L. B. Repair Company, Inc., against Louis E. Whicher, as trustee, etc., and another. From judgment for plaintiff, the defendant trustee appeals. Reversed, and new trial ordered.

Argued November term, 1912, before SEABURY, LEHMAN, and PAGE, JJ.

Parker & Aaron, of New York City (Harold F. Carlton, of New York City, of counsel), for appellant.

Moos, Prince & Nathan, of New York City (Alfred B. Nathan and Sidney J. Loeb, both of New York City, of counsel), for respondent.

LEHMAN, J. The complaint herein seeks damages for the conversion of certain parts of a "Whiteside gas turbine engine, on which the plaintiff claims a lien for work, labor, and services and materials used in the making, altering, repairing, and otherwise enhancing the

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

value thereof." The work and labor performed and the materials furnished, for which the plaintiff claims a lien, are minutely described in a bill of particulars, and the complaint also alleged that the sum for which a lien is claimed was due at the time of the conversion, with interest thereon from the 7th day of June, 1910.

The evidenciary facts in this case are undisputed, and the law applicable to these facts is well settled, and the only question presented in this appeal is the correct inference to be drawn from the undisputed evidenciary facts. It appears that in March or April, 1910, one Dr. Whiteside called on the plaintiff, and asked if they would be interested in doing some work for him in the line of experimental work. He then laid before them plans for an experimental engine, the details of which were not yet fully developed. They told him they would be pleased to go ahead with it, if he would give them subject and plans from which they could work. They talked the matter over as to what would be required, the kind of work he wanted done, and the kind of material and steel which he wanted to use in that construction, and the prices which they were to charge for the same. He told them to go ahead with the work. He brought from time to time the prints from which they were to work, and the blue prints were followed except for some changes suggested by the plaintiff. The experimental engine was to be a working model of certain patents owned by Dr. Whiteside. In June, 1910, Dr. Whiteside told the plaintiff that he was organizing a syndicate of moneyed men to carry on the manufacture of this patent, and that he would not do any more work on it until that syndicate was completed. Dr. Whiteside has never paid the agreed price for the work actually done. It appears that the work which the plaintiff did prior to June, 1910, was work in connection with an air compressor to be used on the engine, and that no parts made by the plaintiff prior to June, 1910, or furnished by Dr. Whiteside to the plaintiff, have ever been removed from the plaintiff's possession. Thereafter, however, the plaintiff was employed by the syndicate organized by Dr. Whiteside to do further work in the making of an entirely different engine, though based on the same basic idea covered by Dr. Whiteside's patent. None of the material belonging to Dr. Whiteside which he had made and which were in the possession of the plaintiff was used on the second engine, and all the work done by the plaintiff upon orders from the defendant's syndicate and which went into the second engine has been paid for.

The plaintiff claims a lien for the work done previous to June, 1910, upon the working model made thereafter from plans prepared thereafter, for materials furnished thereafter and ordered by a syndicate organized thereafter, upon the theory that it was all work done in the making of an engine based upon the basic idea of Dr. Whiteside's patent. I agree with the view that, if all the work had been done under an agreement made by Dr. Whiteside and continued and adopted by the defendant, there would be a real basis for this contention; but I find no such evidence in this case. Dr. Whiteside employed the plaintiff to do certain work according to certain plans and at an agreed price. Thereafter the defendant abandoned the plans and abandoned the materials previously furnished by Dr. Whiteside, and gave the

plaintiff an order to do some other work under the new plans. Conceding that both the employments of the plaintiff were made for the general purpose of completing a working model for Dr. Whiteside's patent, yet certainly, if the employments were made separately and not under one contract, the defendant is not liable for any work performed for Dr. Whiteside previously.

I think the judgment should therefore be reversed, and a new trial ordered, with costs to appellant to abide the event.

SEABURY, J., concurs.　PAGE, J., dissents.